**William D. WIGGINS, Petitioner,**

v.

**NATIONAL GALLERY OF ART, Respondent.**

No. 92–3106.

United States Court of Appeals, Federal Circuit.

Dec. 3, 1992.

William D. Wiggins, submitted pro se.

Julie Shubin, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted, for respondent. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., Mary Mitchelson, Deputy Director, and David M. Cohen, Director.

Before NIES, Chief Judge, RICH, Circuit Judge, and MILLS, District Judge.*

NIES, Chief Judge.

William D. Wiggins appeals the decision of the Merit Systems Protection Board (the Board), Docket No. DC07529110139, affirming his removal from the position of security guard, GS–085–4, at the National Gallery of Art (the agency), based upon charges of (1) insubordination and insolence, (2) failure to carry out specific orders, and (3) creating a public disturbance. We affirm.

## I.

As in other institutions, administrators at the National Gallery employ roll calls as the essential means of presenting crucial, day-to-day information to a security staff of over one hundred individuals. During this official formation, officials dispense daily work assignments, apprise guards of security operations, and provide training.

William D. Wiggins, a security guard at the National Gallery, attended such a meeting on September 19, 1990. During the morning roll call, Chief Jay W. Chambers of the Office of Protective Services announced that the captain of the guard force was on leave because his father was ill, but that the captain would soon return to work. At that point, Wiggins and another guard, Charles Leggett, interrupted the proceedings. Although Wiggins had been warned five months earlier that disruption of roll call would not be tolerated, both he and Leggett complained about disparate leave documentation standards with raised voices. Chief Chambers told Wiggins that he was out of order and asked him to sit. When Wiggins continued to comment loudly, Chief Chambers requested that Wiggins, Leggett, and another commenting guard, Walter T. Monroe, meet with him following the roll call. Wiggins responded by asking Chief Chambers, "What are you going to do? You can't fire me! What are you going to do—spank me—when I come to your office?"

Chief Chambers left the meeting site, unable to complete the disrupted roll call. Subsequently, Wiggins, Leggett, Monroe, and their union representative gathered in the area outside Chief Chambers' office. Chief Chambers ordered Wiggins into his office, but Wiggins refused. The union representative then informed Chief Chambers that Wiggins would not meet with him unless Leggett was also present. Although Chief Chambers warned of the seriousness of disobedience of his direct order, Wiggins maintained his stance and never met with Chief Chambers.

Two days later, Chief Chambers proposed to remove Wiggins for insubordination, failure to carry out specific orders, and creating a public disturbance. By decision letter dated November 19, 1990, the agency effected his removal. On appeal to the Board, the Administrative Judge (AJ) affirmed the agency's decision and the full Board denied his subsequent petition for designation.

---

\* Judge Richard Mills, United States District Court for the Central District of Illinois, sitting by

review. Wiggins then filed a petition for review with this court.

## II.

### A.

■ We review Board decisions under a very narrow standard. A decision must be affirmed unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). *Cheeseman v. Office of Personnel Mgmt.*, 791 F.2d 138, 141 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987).

### B.

■ Wiggins does not contest the occurrence of the above incidents on September 19, 1990, at the roll call and subsequently. He contends, however, his actions were allowed because of his status as his union's Chief Shop Steward. Under 5 U.S.C. § 7114 (1988), a union representative is entitled to be present at any formal discussion between the agency and employees concerning grievances, personnel policies and practices, and conditions of employment. As the AJ found, however, Chief Chambers' announcement of the reason the captain of the force was on leave was not the start of a formal discussion on leave documentation standards, and the roll call meeting, thus, did not implicate section 7114.

■ 5 U.S.C. § 7116 (1988) also fails to excuse Wiggins' behavior. Although section 7116 lists actions that constitute unfair labor practices, such as interference by an agency with an employee's union activities, the AJ properly reasoned that it grants no right to engage in repeated and public insubordination. *See Farris v. United States Postal Serv.*, 13 MSPB 200, 204–05, 14 M.S.P.R. 568, 574 (1983). This analysis comports with Board statements that no unfettered right to disregard orders exists, even where such orders are improper. *See Ingram v. Department of Justice*, 44 M.S.P.R. 578, 582 (1990), *aff'd*, 925 F.2d 1479 (Fed.Cir.1991). If Wiggins had a basis for disputing the legitimacy of his superior's orders, the proper procedure, absent extraordinary circumstances such as physical danger, is to comply and later file a complaint or protest. *Id.* In sum, we find no merit to Wiggins' argument that the Board improperly failed to consider his union status.

### C.

■ Wiggins next contests the penalty of removal. He argues that the AJ did not bind the agency to the policy expressed in its table of penalties, whereby the agency must disregard misconduct committed two or more years earlier in subsequent disciplinary actions. Here, while the AJ found the agency to have impermissibly considered several of Wiggins' previous offenses in determining a penalty, the AJ nonetheless found removal to be reasonable in light of the events of September 19, 1990, standing by themselves. Wiggins agrees with the first holding but disputes the second, arguing that the AJ misapplied the disciplinary factors set out in *Douglas v. Veterans Admin.*, 5 MSPB 313, 332, 5 M.S.P.R. 280, 305–06 (1981).

■ Prominent among the elements the Board considers when scrutinizing penalty decisions is the nature of the employee's position. *Id.* The effectiveness of security operations inherently depends upon respect being given by lower officers to the orders or directions of superiors. Thus, ridicule of a superior and defiant disobedience by a member of a security guard undermines the achievement of the objectives of security operations and is intolerable. While we do not equate the regimentation and discipline imposed on the security guard post that Wiggins held to that imposed on military or police personnel, these requirements nonetheless rise above those borne by ordinary employees. In this context, the Board has observed that "it can hardly be challenged that an agency has the right to expect and hold its security personnel to a high standard of conduct." *Davis v.*

*Smithsonian Inst.*, 13 MSPB 77, 78, 14 M.S.P.R. 397, 400 (1983). Wiggins' disruption and disrespectful attitude during roll call, an official and formal security guard formation, makes his misconduct particularly egregious. Superior officers must be able to convey crucial information to a large security staff in an orderly and structured assembly.

The discipline inherent to the security guard position, along with the formality of a roll call, thus controls the evaluation of Wiggins' behavior. His insolent remarks during roll call not only contravened his earlier warning but also constituted a defiant challenge to Chief Chambers' authority. His subsequent disobedience of direct orders further reaches "to the heart of the supervisor-employee relationship," *Davis*, 13 MSPB at 78, 14 M.S.P.R. at 400. Accordingly, we agree with the Board that the penalty of removal was not unreasonable.

Wiggins further argues that other individuals played comparable roles in the incidents of September 19, 1990 but received lesser punishment. We do not, however, consider these individuals to be similarly situated. *See Rasmussen v. Department of Agriculture*, 44 M.S.P.R. 185, 191–93 (1990). Neither Leggett nor Monroe questioned Chief Chambers' authority, taunted him, or were the subject of an earlier warning. Their differing disciplinary treatment, therefore, does not support a claim of disparate treatment.

## CONCLUSION

Having considered the above and all other arguments of Wiggins, we hold that the decision of the Board was supported by substantial and competent evidence and was not arbitrary or capricious, an abuse of discretion, or contrary to law. Accordingly, the decision of the Board is affirmed.

AFFIRMED.